UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALLACE CHURCH & CO. INC. f/k/a WALLACE CHURCH, CO. f/k/a WALLACE CHURCH, INC. and STAN CHURCH,<br><br>                    Plaintiffs,<br><br>         v.<br><br>WYATTZIER, LLC, d/b/a ICONIC BRANDS, RONALD ZIER and KENNETH WYATT,<br><br>                    Defendant. | **Civil Action No.:**<br>**1:20-cv-01914-CM** |

**DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

McMahon, CJ:

On February 6, 2020, Plaintiff Stan Church ("Church") and Plaintiff Wallace Church, & Co. Inc. ("Wallace Church") brought this action against Defendant Kenneth Wyatt ("Wyatt"), Defendant Ronald Zier ("Zier") (collectively "Individual Defendants"), and Defendant WyattZier, LLC dba Iconic Brands ("WyattZier"). The Complaint alleges that Defendants breached various contractual obligations owed to Plaintiffs under a Master Service Agreement and an associated Scope of Work Agreement (collectively, "the MSA Agreements") – both entered into in 2006 – which governed the parties' relationship as distiller (Defendants) and brander (Plaintiffs).

This case was originally filed in the New York State Supreme Court; it was removed by Defendants on diversity grounds. The Individual Defendants, who originally moved in the State Supreme Court for dismissal, on the ground that New York courts lack personal jurisdiction over them, press that motion here. They contend that they cannot be sued in New York because any New York-related activities they conducted were performed on behalf of

the corporate defendant. This, they claim, means they are not personally amenable to suit under either CPLR § 301 (general jurisdiction) or § 302 (transactional/long arm jurisdiction).

Defendants' motion is DENIED.

## BACKGROUND

The following facts are either undisputed or are alleged in plaintiffs' complaint or the affidavits and exhibits submitted in support of and opposition to the motion to dismiss for lack of personal jurisdiction. This Court will accept these facts as true for the purposes of resolving this jurisdictional dispute. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 27–28 (2d Cir. 1996).[1]

### I.     The Parties

Plaintiff Wallace Church is incorporated and maintains its principal place of business in New York. (Dkt. No. 1-1 at ¶ 2). Wallace Church provides branding and marketing services to its clients. (*Id.* at ¶ 17). These types of services are valuable to establishing the commercial identity of products in the marketplace.

Plaintiff Church is a New York resident and a corporate officer of Plaintiff Wallace Church. (*Id.* ¶ 1; Dkt. No. 15-1).

Defendant WyattZier is a New Hampshire limited liability company with its principal place of business either in New Hampshire, (Dkt. No. 1-1 at ¶ 4), or in Rigby, Idaho. (Dkt. No. 1-2, Ex. 2 at 1). WyattZier is alleged to do business under the rubric Iconic Brands. (Dkt. No. 1-1 at ¶ 3). Iconic Brands is in the liquor business; it markets various distilled products, including beverages bearing the brands ZYGO and 44° North.

Just as the citizenship of an LLP is determined by the citizenship of each of its partners, the citizenship of an LLC is determined by the citizenship of each of its members.

---

[1] Courts may consider affidavits and documents submitted by the parties when deciding a Rule 12(b)(2) motion. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *Arch Specialty Ins. Co.*, 2005 WL 696897, at *1 (citing *ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 50 (S.D.N.Y. 1999).

*See Catskill Litig. Trust v. Park Place Entm't Corp.*, 169 F. App'x 658, 659 (2d Cir. 2006) ("[T]he citizenship of a limited liability corporation is determined by reference to the citizenship of its members."); *Maxim Group LLC v. Life Ptnrs. Holdings, Inc.*, No. 07 Civ. 8099, 2010 U.S. Dist. LEXIS 405, at *1-2 (S.D.N.Y. Jan. 5, 2010) (Preska, C.J.) ("For the purposes of diversity jurisdiction, a limited liability company's . . . citizenship is determined not by the LLC's place of incorporation or principal place of business, but by the citizenship of each member of the LLC."). For subject matter jurisdiction purposes, it is, therefore, relevant who the members of the LLC are. The parties, apparently ignorant of the rule, have failed to apprise the Court about that key fact. In response to an inquiry from the Court, defendants' attorneys confirmed that Wyatt and Zier are members of the LLC, but so are WZ Holdings, LLC, a New Hampshire limited liability company; Hood River Distillers, Inc., an Oregon corporation; Peter Ewing, whom the defendants understand is a citizen of New Hampshire; Lehy II Investment Partners, LLC, a Kentucky limited liability company; and Frank McDonough, whom the defendants understand is a citizen of South Carolina.[2] (Dkt. No. 19)

Wyatt is also alleged to be the Registered Agent of WyattZier. (Dkt. No. 1-1, Ex. 1 at ¶ 7). Zier is also alleged to be the co-founder of Idaho Mercantile Distillers Association. (*Id.* at ¶ 12).

Until 2018, Zier maintained a residence in New York. (Dkt. No. 15-3, Ex. B at 2). And in 2006, Plaintiff designed a business card for Zier that listed a New York address and phone number. (Dkt. No. 15-8, Ex. G at 2–10, 12–15). However, Zier claims that he no

---

[2] The court still has no idea whether there is actually complete diversity, because I would need to know the citizenship of every member of WZ Holdings (which is a citizen of every state where any of its members is a citizen) and Lehy II Investment Partners, LLC (ditto). *The states of incorporation are IRRELEVANT for the purpose of assessing diversity.* Defense counsel must immediately apprise the court whether any member of either of these LLC members of Wyatt Zier is a citizen of New York. And if some other LLC is a member of either WZ Holdings or Lehy II Investment Partners, then counsel must advise whether any member of those LLCs is a citizen of New York. If any is, then the case must be remanded to the New York State Supreme Court for lack of complete diversity. Counsel has 72 hours to advise the court.

3

longer maintains a New York residence or an address for business purposes in New York. (Dkt. No. 1-2, Ex. C at ¶¶ 5–12). Zier asserts that he is a citizen of California; and Wyatt asserts that he is a citizen of New Hampshire. Plaintiffs do not contest the proposition that there is complete diversity.

## II.   Background

From 2001 until 2006, Plaintiffs or their principals provided Defendants with branding and marketing services under several individual scope of work documents and contract purchase orders. (Dkt. No. 1-1 at ¶ 4; Dkt. No. 15-6, Ex. E). In particular, Plaintiffs provided branding services for two of WyattZier's beverage lines, ZYGO and 44° North. The latter line was distilled in Idaho and included a potato vodka flavored with huckleberry, and a base vodka, flavored with cherry and mint. (Dkt. No. 1-1 at ¶¶ 20, 22).

In October 2006, the parties allegedly entered into several agreements. One, a Scope of Work Agreement, related specifically to the design of various SKUs for the 44° North product line. (Dkt. No. 1-1 at ¶ 24). Another, called the Master Services Agreement ("MSA"), outlined an anticipated ongoing relationship for the parties and set the terms (including compensation) for all projects in which they intended to engage. (Dkt. No. 15-4 at ¶ 1–4). The MSA provided that Wallace Church would be compensated by payment of royalties based on the sales volume of the products it branded and other metrics. (Dkt. No. 1-1 at ¶ 30). The complaint further alleges that under the MSA, Wallace Church and/or Stan Church would retain ownership of any intellectual property it created for WyattZier, and that Defendants would use that intellectual property as licensee, not owner. (Dkt. No. 1-1 at ¶ 36–37).

The MSA also contained a "Continuing Relationship" provision giving Wallace Church the right of first refusal (essentially, first crack) at branding any new WyattZier products. (Dkt. No. 15-4 at ¶ 10). This clause also provided that, even if WyattZier

4

terminated the parties' relationship, it remained obligated to its financial commitments for brands on which Wallace Church had already worked. (*Id.*)

Finally, the MSA provided that if there were a change in control – defined as WyattZier's either selling itself or its assets to a third party or going out of the liquor business – Wallace Church would receive ten percent of either the gross proceeds or the gross value of the brands. (Dkt. No. 1-1, Ex. 1 at ¶ 31; Dkt. 1-2, Ex. 1 at ¶¶ 1–4).

The MSA is governed by New York law. (Dkt. No. 15-4 at ¶ 8).

The parties' business relationship was marred, apparently from the beginning, by continual missed and late payments of royalties owed to Wallace Church—despite the fact that Individual Defendants allegedly made payments to themselves as principals of the LLC. (Dkt. No. 1-1, Ex. 1 at ¶ 42). Furthermore, Individual Defendants allegedly bought time for themselves and their corporation by making repeated misrepresentations to Plaintiffs about their intent to pay the amounts owed, which allegedly lulled Plaintiffs into sleeping on their right to bring suit to recover amounts due to them. (Dkt. No. 1-1, Ex. 1 at ¶¶ 45–46). The Complaint also asserts that Defendants stole Wallace Church's intellectual property by applying for trademarks in their own name, and that they failed to honor Wallace Church's right of first refusal on additional work. (*Id.* at ¶ 38). The time when these things occurred is not specified.

Finally, Plaintiffs allege that a change of control may have also occurred, though they do not identify any specific transaction that might have triggered such a change or when it might have happened. (*Id.* at ¶ 66). Needless to say, if such a transaction occurred, Wallace Church has not seen its promised 10% of the brands' proceeds.

  **III.** **The Complaint in This Action**

This case was commenced on February 6, 2020.

Plaintiffs' complaint asserts a total of 12 causes of action, including breach of contract for failure to pay royalties, breach of contract for failure to make payment upon a change in control, breach of contract for improper use and acquisition of Wallace Church intellectual property and failure to facilitate Wallace Church copyright rights, breach of contract for failure to provide Wallace Church right of first refusal, fraud, fraud in the inducement, misrepresentation, quantum meruit and unjust enrichment, breach of good faith and fair dealing, equitable estoppel, and promissory estoppel. (Dkt. No. 1-1, Ex. 1 at 9–18). The claims for fraud, fraud in the inducement and misrepresentation are asserted only against the Individual Defendants. (*Id.* at 13–15).  The complaint also contains a "claim" for "piercing the LLC veil," (*Id.* at 18), but piercing the corporate veil is not a cause of action. It is, rather, a way of holding individuals who would otherwise be shielded by corporate liability rules liable for corporate misdeeds. Through its incorrect "piercing the corporate veil" claim, Plaintiffs seek to hold the Individual Defendants liable for the causes of action that are asserted against the LLC. (*Id.*).

According to the Complaint, by 2015, Defendants owed Plaintiffs approximately $500,000 in royalties (before interest). (*Id.* at ¶ 47). From January 2016 through at least 2017, Plaintiffs allegedly began making partial payments of the amounts owed. (*Id.* at ¶¶ 48, 52). On November 17, 2019, Plaintiffs, demanded that Defendants pay the entire amount owed, plus interest, that they cease and desist illegal and improper use of Plaintiff's intellectual property, and that they provide an accounting as required by the contract. (*Id.* at ¶ 56). Defendants ignored this demand.

The complaint demands money damages and an order directing WyattZier to pay attorneys' fees, costs of suit, statutory and common law interest on all unpaid moneys and awards, pre-judgment and post-judgment interest, and any other relief deemed just and equitable by this Court.

### IV. Procedural History

On February 27, 2020, Individual Defendants' filed a notice and memorandum in support of a motion to dismiss for lack of personal jurisdiction in New York State Supreme Court pursuant to CPLR 3211(a)(7) and (a)(8). (Dkt. No. 1-2, Ex. 2 at ¶ 2). No such motion was made on behalf of the LLC; (*see* Dkt. No. 16 at 8); therefore jurisdiction over it is conceded.

On March 4, 2020, Defendants removed this case to this Court. (Dkt. No. 1 at 1). This Court will construe Individual Defendant's motion to dismiss as made pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2).

### V. Jurisdictional Facts

The complaint and moving papers contain a number of allegations about the various New York contacts between representatives of Church and WyattZier over the years. The parties are alleged to have engaged in contract negotiations in New York, (Dkt. No. 1-1 at ¶ 15); Plaintiffs allegedly sent draft versions of what became the MSA to WyattZier in care of Zier at a New York address, (Dkt. 15-2, Ex. A at 2, 6). Zier allegedly attended at least three in-person presentations in Wallace Church's New York office during 2009, (Dkt. No. 15-6 at 23, 25, 27); and the Individual Defendants thereafter regularly communicated with Plaintiffs, who were located in New York, about payment and work plans pursuant to the MSA. (Dkt. No. 1-1, Ex. 1 at ¶ 41; Dkt. No. 15-7, Ex F). Indeed, email exchanges, provided to the Court, between Church or two of his managing directors at Wallace Church and the Individual Defendants show the parties referencing and arranging various phone conversations and in-person meetings held from 2015 to 2019 in New York at which the parties discussed payment schedules for Wallace Church's services, exchanged agreement drafts, and tried to maintain their business relationship. (Dkt. No. 15-1 at 3–4; Dkt. No. 15-7, Ex. F at 6–14, 17–21, 23–

7

38). In each instance, the sender or recipient of the emails on behalf of WyattZier was either Wyatt or Zier. (Dkt. No. 15-7, Ex. F).

## DISCUSSION

### I. Applicable Law

When considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996)). When, as here, discovery has yet to occur, plaintiffs need only make a *prima facie* showing of jurisdiction by "pleading in good faith legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citing Fed.R.Civ.P. 11).

At this stage of the proceedings, courts construe all allegations and resolve any doubts in favor of the plaintiffs. *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir. 1993)*; see Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995) (citing *Ball*, 902 F.2d at 197). ("[Where] the defendant challenges only the legal sufficiency of the plaintiff's factual allegation by filing a Rule 12(b) motion, a plaintiff's obligation generally is easiest to fulfill.").

Under FRCP 4(k)(1)(A), a federal district court sitting in diversity applies the law of the forum state. This court applies New York law.

The court must conduct a two-part inquiry to decide questions of personal jurisdiction. *Metro. Life Ins. Co.*, *supra.*, 84 F.3d at 567. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under

8

these laws comports with the requirements of due process." *Id.* (citing *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir. 1990)).

## II. Individual Defendants are Subject to Personal Jurisdiction in New York

Plaintiffs assert that Individual Defendants are subject to this Court's "general" personal jurisdiction under CPLR § 301 and "specific" personal jurisdiction under CPLR § 302(a)(1) and (a)(3).

Because Plaintiffs neither satisfactorily allege that Defendants, as individuals, "do business" in New York, nor that they were present in New York at the time the Complaint was filed, Individual Defendants are not subject to general jurisdiction under CPLR § 301. However, Individual Defendants are subject to this Court's specific jurisdiction under CPLR § 302(a)(1). They were primary actors in the business transaction giving rise to the Complaint. Furthermore, they are subject to personal jurisdiction under § 302(a)(3) for their allegedly tortious out-of-state conduct (fraud and fraudulent inducement), which is alleged to have caused harm to Plaintiffs in state. Because this exercise of personal jurisdiction comports with the 14th Amendment's Due Process requirements, this Court retains personal jurisdiction over Individual Defendants.

### A. *Individual Defendants Are Not Subject to General Jurisdiction under CPLR § 301*

Under CPLR § 301, a court has general personal jurisdiction over an individual if his conduct with New York is "so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). To determine whether a defendant does business in the state, the Court must be able to "say from the facts" that the defendant "is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 633 (S.D.N.Y. 2008) (citing *Landoil*

9

*Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34 (1990)). Importantly, a defendant's presence in New York for the purposes of general jurisdiction is evaluated "at the time the complaint was filed." *Id.* at 638 (citing *Darby v. Compagnie Nat. Air France*, 735 F. Supp. 555, 560 (S.D.N.Y. 1990)).

However, an individual defendant "cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." *Brinkmann v. Adrian Carriers, Inc.*, 29 A.D.3d 615, 617 (2006) (citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 313, (1982) (citing *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 90 (2d Cir. 1975)).

Plaintiffs assert that Individual Defendants are subject to general jurisdiction under CPLR § 301 because they "do[] and/or solicit[] business within the State of New York," (Dkt. No. 1 at 3), and their "extensive affiliations with New York are so continuous and systematic as to render them essentially at home" in the state. (Dkt. No. 15 at 4). These affiliations include allegedly travelling to Wallace Church's New York office on behalf of WyattZier at least three times in 2009 to observe project presentations, (Dkt. No. 15-6, Ex. E at 22–23, 25–28), travelling to New York at least once in 2015 and once in 2019 to discuss issues regarding the payment schedule between the parties, (Dkt. No. 15-7, Ex. F at 17; Dkt. No. 1-2, Ex. B at ¶ 13), and engaging in contract negotiations and regular correspondence with Plaintiffs between 2001 and 2019. (Dkt. No. 15-7, Ex. F at 6–8, 17–21, 23–30; *see* Dkt. No. 15-1 at 3–4 ("I confirm that during the relevant time period, Ronald Zier and Kenneth Wyatt met with me, face to face, in the New York office several times.")).

Moreover, Plaintiffs suggest that because Defendant Zier has maintained three different New York addresses, he was "present" in New York for the purposes of general jurisdiction. (Dkt. No. 15-1 at 4–5). Documents in the record indicate that, in 2004, Plaintiffs sent WyattZier a draft of a Brand and Ownership Royalty Agreement, addressed to Zier at a

10

New York Address, (Dkt. 15-2, Ex. A at 2, 6), and in 2006, Wallace Church created various business card designs for Zier that listed a second New York Address and phone number. (Dkt. No. 15-8, Ex. G at 2–10, 12–15). Additionally, Zier owned property in New York at a third address until 2018. (Dkt. No. 15-3, Ex. B at 2).

In response, Individual Defendants refute that they in their personal capacities do business in or derive revenue from New York, reside in New York, or own any property in New York. (Dkt. No. 1-2, Ex. B at ¶¶ 9–12; Dkt. No. 1-2, Ex. C at ¶¶ 9–12). Additionally, Individual Defendants deny "negotiate[ing], draft[ing], and finaliz[ing]" the MSA Agreements with Plaintiffs in New York in 2006, and claim that Wyatt travelled to New York only once within the last year on business related to the complaint. (Dkt. No. 1-2, Ex. B at ¶¶ 2, 5, 13; Dkt. No. 1-2, Ex. C at ¶¶ 2, 5, 13).

Plaintiffs assert that Wyatt and Zier, as individuals, do business and have "extensive affiliations" in New York. (Dkt. No. 15 at 4). However, Plaintiffs' only support for these legal conclusions rests on activity conducted by the Individual Defendants' alleged conduct as WyattZier corporate principals. (*See id.* at 4; Dkt. No. 15-7, Ex. F (providing email exchanges between parties' using corporate email addresses and corporate signatures)). They do not identify any other business that Wyatt or Zier conducts in New York, or any other current contacts with New York that would be sufficient to permit an exercise of general jurisdiction. Because "a corporate officer cannot be subject to general jurisdiction under CPLR § 301 for his New York activities on behalf of a corporation," and because Plaintiffs allege only that Individual Defendants did business in New York within their role as corporate principals, Individual Defendants are not subject to personal jurisdiction pursuant to CPLR § 301. *Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, No. 05 CIV. 9994 (KMW), 2007 WL 747807, at *6 (S.D.N.Y. Mar. 9, 2007) (citing *Laufer*, 55 N.Y.2d at 312).

Additionally, presence for the purposes of general jurisdiction under § 301 is determined at the time of the complaint. As this Complaint was filed on February 6, 2020, Plaintiffs' allegations that Zier owned property in New York until 2018, and that he formerly maintained New York addresses and a New York phone number for business purposes, are irrelevant to this court's determination of general jurisdiction.

B. *Individual Defendants Are Subject to Personal Jurisdiction under CPLR § 302(a)*

CPLR § 302, New York's long-arm statute, provides New York courts with a second path to specific personal jurisdiction over nonresident defendants. In relevant part, CPLR § 302(a) provides:

> (a) . . . As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> (3) commits a tortious act without the state causing injury to a person or property within the state . . . .

CPLR § 302(a).

Because § 302(a) is a so-called "single act" statute, even a single purposeful transaction conducted in New York can give rise to specific jurisdiction, as long as the plaintiff's claims raised have a "substantial relationship" to the transaction. *Pilates, Inc.*, 891 F. Supp. at 179 (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007) (citing *PDK Labs, Inc v. Friedlander*, 103 F.4d 1105, 1109 (2d Cir. 1997)). Furthermore, because "technological advances in communication and travel systems" allow for "an enormous volume of business [to] be transacted within a State without a party ever entering it," a nonresident defendant need not actually enter the forum state to be subject to its specific jurisdiction. *Kreutter*, 71 N.Y.2d at 467.

12

Unlike CPLR § 301, CPLR § 302 allows courts to exercise specific jurisdiction over corporate principals based on transactions made or acts taken in a corporate capacity. In fact, the fiduciary shield doctrine, which shelters an individual from personal jurisdiction when his transactions in the forum state were done solely in a corporate capacity, has been explicitly rejected by the Court of Appeals and Second Circuit for the purposes of § 302(a). *Id.* at 470 ("Turning then to the interpretation of CPLR 302, we determine that it is neither necessary nor desirable to adopt the fiduciary shield doctrine in New York . . . Nor is the rule necessary as a matter of fairness."); *Retail Software Servs., Inc., v. Lashlee* 854 F.2d 18, 22 (citing *Kreutter*, 71 N.Y.2d at 463) (finding a corporate officer acting within a corporate capacity subject to New York's personal jurisdiction under *Kreutter*).

In order to establish personal jurisdiction over an individual for conduct performed in a corporate capacity, a plaintiff need only establish that the principal engaged in purposeful activities in the forum state on the behalf of the corporation, with the corporation's knowledge and consent, and subject to that the corporation's control. *Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs., Inc.*, No. 04 CIV. 1852 (RCC), 2005 WL 696897, at *3 (S.D.N.Y. Mar. 24, 2005) (citing *Kreutter*, 71 N.Y.2d at 527). "At its core, this inquiry turns on whether the corporate employee was the 'primary actor in the transaction in New York' or merely 'some corporate employee who played no part in' it." *Advanced Video Techs. LLC v. HTC Corp.*, No. 11 CIV. 06604 (CM), 2019 WL 4198769, at *11 (S.D.N.Y. Aug. 12, 2019) (citing *Retail Software Servs., Inc.*, 854 F.2d at 22) (citing *Kreutter*, 71 N.Y.2d at 470) (alterations omitted)).

i.   *Personal Jurisdiction under CPLR § 302(a)(1)*

CPLR § 302(a)(1) states that specific jurisdiction may be exercised over a nonresident defendant when he or she "transacts business within the state," and the claims asserted arise from that New York transaction. CPLR § 302(a). It is well established that under 302(a)(1),

13

"[a] non-domiciliary transacts business in New York by fully availing him or herself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws." *Ehrenfeld*, 489 F.3d at 548 (internal quotation marks and alterations omitted); *see Big Apple Pyrotechnics*, 2007 WL 747807, at *4 (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir. 1983) ("'Transacting business requires a lesser showing than 'doing business' because even one isolated transaction may give rise to New York jurisdiction.")).

When evaluating whether a defendant has transacted business in New York, courts consider the totality of the circumstances. *Agency Rent A Car Sys., Inc.*, 98 F.3d at 29. However, the Second Circuit has established four factors for courts to consider when making such a determination:

> (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether the defendant visited New York to meet with the parties after the contract was executed; (3) whether there is a choice-of-law clause in the contract; and (4) whether the contract requires the defendant to send notices and payments into the forum state.

*Id.*

Here, all the conditions set forth by the Second Circuit are met.

The Individual Defendants, acting on behalf of WyattZier, were the "primary actors" in the creation and negotiation of the Mast Service Agreement—the contract underlying this action. Zier concedes, in reference to the MSA Agreements, that he "did reside in New York in 2006 and, on behalf of WyattZier, engaged in negotiations with Wallace Church." (Dkt. No. 1-2, Ex. C at ¶ 5).

It is equally patent that, through the actions of Wyatt and Zier, the corporation maintained an ongoing contractual relationship with Wallace Church, a New York corporation, and its principals for many years. Plaintiffs provide records indicating that that Individual Defendants regularly discussed work streams and payment schedules with

14

Plaintiffs on behalf of WyattZier; negotiated contracts with Plaintiffs; retained Plaintiffs' services under various Scopes of Works; attended project presentations in Plaintiffs' office; and agreed to a "Continuing Relationship" provision giving Plaintiffs the right of first refusal for any new brands WyattZier might create. The Individual Defendants visited New York to meet with Church representatives on multiple occasions after the contract was executed – Wyatt even admits that he did so at least once within the last year (*see* Dkt. No.1- 2, Ex. B at ¶ 13) – and as the email chains demonstrate, Zier and Wyatt also communicated with Wallace Church representatives via email on behalf of the LLC.

Third, the contract contains a New York choice of law clause. (Dkt. No. 1-2, Ex. 1, at ¶ 8).

Finally, the MSA Agreements establish compensation and payment schedules that require Defendants to send payments to Plaintiffs in New York. (*Id.* at ¶¶ 1–3; Dkt. No. 15-5, Ex. D at 2–5).

Individual Defendants have no response, except to assert yet again that they are protected by the fiduciary shield doctrine because they transacted all their business in New York on behalf of WyattZier, and gained no personal benefit from the transactions related to this Complaint. (Dkt. No 16 at 4–5). But while that argument works when discussing general jurisdiction under CPLR § 301, it has been long disavowed for the purposes of specific jurisdiction under CPLR § 302(a). *See Kreutter*, 71 N.Y.2d at 470; *Retail Software Servs., Inc.*, 854 F.2d at 22.

Moreover, Individual Defendants, as co-founders of WyattZier, signatories to the Mast Service Agreement, and primary representatives of WyattZier in all correspondence and negotiations with Plaintiffs, are indisputably "primary actors" in the transaction at issue. Furthermore, at least a portion of the argument is not plausible, because, as members of the corporate defendant – a limited liability corporation – they share in the profits and losses of

15

the corporation and so stand to benefit from the transactions underlying the complaint. N.H. Rev. Stat. Ann. § 304-C:12; N.H. Rev. Stat. Ann. § 304-C:15; Mark A. Sargent & Walter D. Schwidetzky, *Limited Liability Company Handbook* § 1:3 (2019). This is entirely without regard to whether the LLC is, in fact, their alter ego, as alleged by Plaintiffs.

And even if they did not stand to benefit directly from the earnings of the LLC, the New York Court of Appeals explained in *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470 that § 302 does not "accord any special treatment to fiduciaries acting on behalf of a corporation or . . . insulate them from long-arm jurisdiction for acts performed in a corporate capacity" because "rarely, if ever, does a corporate agent not derive some benefit from acting on behalf of his principal." *See Arch Specialty Ins. Co.*, 2005 WL 696897, at *4 ("The court in *Kreutter* held that 'the fiduciary shield rule is not available to defeat jurisdiction under the NY long-arm statute' and did not leave room for any exceptions.").

Therefore, Wyatt's and Zier's business activities in New York and with a New York corporation over the past 14 years, even though conducted on behalf of their LLC, subject them to personal jurisdiction in New York as long as the exercise of jurisdiction comports with due process – which, as will be seen, it plainly does.

ii.     *Personal Jurisdiction under CPLR § 302(a)(3)* [3]

Because jurisdiction under CPLR 302(a)(1) ropes Wyatt and Zier into this New York Court on claims sounding in both contract and tort, it is really not necessary to explore Plaintiffs' alternative argument, which is that the Individual Defendants are subject to specific jurisdiction under CPLR § 302(a)(3), because they, on behalf of WyattZier, committed "tortious act[s] without the state causing injury to [Plaintiffs] within the state," (Dkt. No. 15 at 5, 8; Dkt. No.1). That inquiry would also require the Court to examine whether Defendants (1) regularly solicited business in New York; or (2) should have

---

[3] Plaintiffs do not claim that Individual Defendants are subject to jurisdiction pursuant to CPLR § 302(a)(2).

16

reasonably expected their New York transaction to have consequences in the state and derived substantial revenue from interstate commerce. CPLR 302(a)(3).

Specifically, Plaintiffs allege that Defendants Zier made various fraudulent misrepresentation that were aimed at Plaintiffs – New York residents. They also allege that Zier wrongfully diverted WyattZier's resources to co-found the Idaho Mercantile Distillers Association, which (in ways that are not altogether clear from the pleading) allegedly damaged Plaintiffs. (*Id.*; Dkt. No. 1-1, Ex. 1 at ¶ 54).

Defendants deny the factual sufficiency of Plaintiffs' allegations. (Dkt. No. 2 at 9–10). However, this is not a motion to dismiss the Complaint (which does indeed appear to suffer from some deficiencies). The Individual Defendants chose to make a motion limited to the issue of personal jurisdiction. When that issue is raised at the pleading stage and prior to discovery, plaintiffs need only plead in good faith "legally sufficient allegations of jurisdiction" when challenged by a jurisdiction-testing motion. *Ball*, 902 F.2d at 197 (citing Fed.R.Civ.P. 11). Moreover, "the plaintiff's *prima facie* showing may be established solely by allegations" at this preliminary stage. *Id.* Therefore, at this point in the proceedings, Plaintiffs' allegation that fraudulent representations were made to them by Wyatt and Zier presumptively gives rise to specific jurisdiction over Individual Defendants under CPLR § 302(a)(3) for claims arising out of those alleged misrepresentations. "Once a plaintiff has alleged facts that, if proved, would support jurisdiction, a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations." *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004), (citing *Bialek v. Racal-Milgo, Inc.*, 545 F.Supp. 25, 33 (S.D.N.Y. 1982)).

### C. Jurisdiction Comports with Due Process

Finally, this Court's exercise of personal jurisdiction over Individual Defendants must comport with the requirements of Due Process. It does.

This analysis first requires courts to determine whether a nonresident defendant has "certain minimum contacts" with the forum state. *Int'l Shoe*, 326 U.S. at 416 (internal citations omitted). Second, a "reasonableness inquiry" must be conducted to ensure that personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Metro. Life Ins. Co.*, 84 F.3d at 568 (citing *Int'l Shoe*, 326 U.S. at 316).

Defendants argue that, even if they are subject to § 302(a) jurisdiction, they have insufficient contacts with New York to satisfy the requirements of the Due Process Clause. (Dkt. No. 16 at 7–8). However, this is a "difficult argument to make" because "it is well established that Rule 302(a) 'does not extend New York's long arm jurisdiction to the full extent permitted by the constitution.'" *Arch Specialty Ins. Co.*, 2005 WL 696897, at *5 (citing *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F. Supp. 2d 334, 339 (S.D.N.Y. 1998)). Therefore, where a court exercises jurisdiction over an individual based on a business transaction in the forum state under 302(a), "the requirements of due process are typically satisfied." *Advanced Video Techs. LLC*, 2019 WL 4198769, at *12 (citing *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 264 (S.D.N.Y. 2019)).

Here, the Individual Defendants plainly had sufficient minimum contacts with New York so as not to run afoul of International Shoe. They elected to do business with a New York entity; they negotiated a contract in New York and conducted the affairs of that LLC with their New York counterparts; they came into New York on business relating to that contract; and they elected to have their business relationship be governed by New York law. Indeed, the short answer to the "minimum contacts" question is found in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002), where the Second Circuit noted, "If a court has specific jurisdiction over a defendant, then 'minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum state and could foresee being haled into court there."

18

Turning to the "reasonableness" inquiry, the Supreme Court has articulated five factors for a court to consider, including: (1) any burden imposed on Defendant; (2) the forum state's interest in hearing the case; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interests of the states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987). Under this five-factor analysis, it is clearly reasonable for a New York court to exercise personal jurisdiction over Individual Defendants in this lawsuit.

First, Defendants will not be unduly burdened by being made party to this litigation. In fact, they will not be burdened at all. The LLC Defendant does not contest that this court has personal jurisdiction over it, and the Individual Defendants – who, per such evidence as the court has seen to date, conducted the business of the LLC in connection with the business relationship that lies at the heart of this case – will be the key witnesses on behalf of WayttZier. So they will have to participate in this lawsuit no matter what. "[A]s a result, notions of fairness do not require us to shield him from the reach of the long-arm statute." *Kreutter*, 71 N.Y.2d at 471.

Second, New York has an interest in hearing cases concerning injuries against its citizens and disputes over contracts negotiated in New York to which New York corporations are party.  *See Retail Software Servs., Inc.*, 854 F.2d at 24; *Arch Specialty Ins. Co.*, 2005 WL 696897, at *6.

Third, a New York court would provide the most convenient and effective relief to Plaintiffs, who are located in New York, not in New Hampshire or California or Idaho.

Fourth, adjudicating Plaintiff's claims against Individual Defendants and against WyattZier in the same forum will resolve this controversy in the most efficient way.  If the

19

Individual Defendants had to be sued elsewhere, Plaintiffs would have to maintain two overlapping lawsuits in two different jurisdictions.

Finally, the shared interests of the states in furthering social policy "do[] not affect the reasonableness of exercising personal jurisdiction over Defendants." *Arch Specialty Ins. Co.*, 2005 WL 696897, at *6.

As is obvious from the foregoing analysis, the exercise of jurisdiction over Wyatt and Zier would not violate traditional notions of fair play and substantial justice, and so would comport with Due Process. That being the case, the Individual Defendants are subject to specific personal jurisdiction in New York.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

The Clerk of Court is directed to remove the motion at Docket No 1-2 from the Court's list of pending motions.

Dated: July 30, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL